IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bradley Dresher,   Case No. 3:15CV585

       Plaintiff,

   v.   **ORDER**

Lucas County, et al.,

       Defendants

This is a civil rights action in which the plaintiff, Bradley Dresher, alleges Lucas County, Ohio and Lucas County Sheriff's Department employees violated his constitutional rights and various Ohio laws.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

Pending is the defendants' joint motion for summary judgment with respect to all claims. (Doc. 26). For the following reasons, I grant the motion in part and deny the motion in part.

## Background

On March 2, 2014, Dresher celebrated his birthday at a local bar. After having several alcoholic drinks, Dresher received a phone call from his sister. She told Dresher she was in a physical argument with her boyfriend at Dresher's home, so Dresher left the bar and returned home.

Toledo Police Department officers later arrived at Dresher's home in response to a 911 call concerning the same incident. On arriving, officers asked about a gun and ordered Dresher to show his hands. He did not comply. Because of his refusal, an officer handcuffed Dresher.

Officers then conducted a records' check, which revealed an outstanding warrant. They arrested Dresher on the outstanding warrant and obstruction and intoxication charges. They took him to the Lucas County Corrections Center (LCCC). From the time of his arrest, Dresher was loud and obnoxious and repeatedly made inappropriate comments to the officers.

This behavior continued when Dresher arrived at LCCC and awaited the start of booking. As evidenced by surveillance videotape, Dresher screamed and cursed at various Toledo Police officers and Sheriff's Department employees. Because of this disruptive behavior, a correction officer placed Dresher in a holding cell by himself, where Dresher continued to scream and act out.

Later, Dresher returned to booking to complete an intake information document. Sheriff's Department employees, however, could not complete the form because Dresher did not cooperate.

Due to Dresher's conduct, two Sheriff's Department correction officers, Derrick Diggs and Andrew Gorney, took Dresher to the dress out room, where the events at issue occurred. In the dress out room, an inmate undresses, squats and coughs, dresses in a jumpsuit, and is handcuffed. Then, a correction officer transfers the inmate to a holding cell.

Despite multiple instructions, Dresher never put on the jumpsuit. According to Officers Diggs and Gorney, Dresher refused to comply with the orders to dress into the jumpsuit. Dresher, however, disputes this and claims he simply could not put the suit on by himself.

Because Dresher had to put on the jumpsuit, Officers Diggs and Gorney attempted the next step – handcuffing – before transfer to a holding cell. Both officers claim Dresher resisted their attempt, tensed his fists, and pulled away from them. Dresher disputes this.

Due to the alleged resistance, Officer Gorney told Officer Diggs they should take Dresher to the ground. Both officers claim the takedown was necessary to protect themselves from Dresher, who, according to their testimony, was aggressive, confrontational, and threatening. During the takedown, Dresher's left arm was fractured. This injury gives rise to Dresher's claims.

After the takedown, the officers handcuffed Dresher for security purposes. Dresher claims while he was on the ground, Officers Diggs and Gorney yelled at him and pulled on the handcuffs despite his injury. Dresher further claims Diggs stepped on his injured arm.

Sergeant Gumpf, who entered the dress out room after the takedown, requested medical assistance. About five minutes later, Nurse Mary Sheehy arrived. Sheehy examined Dresher, suspected a fracture to his left arm, and asked Sergeant Gumpf to call Toledo Fire & Rescue for additional medical assistance.

Diggs then left the room. Gorney and Sheehy stayed in the room to monitor Dresher. Shortly thereafter, Toledo Fire & Rescue arrived and took Dresher to St. Vincent's Hospital.

Dresher brought this suit against defendants Lucas County, Lucas County Corrections Officers Derrick Diggs, Andrew Gorney, and John Doe #1, Lucas County Nurse Mary Sheehy, and Lucas County Sheriff's Office Employees John Roes #1-10.

Dresher alleges: 1) defendants Diggs and Gorney used excessive force, and defendants Diggs, Gorney, and John Doe #1 failed to intervene in violation of the Fourth and Fourteenth Amendment; 2) defendants Lucas County and John Roe employees failed to train and supervise

officers and jail staff and failed to investigate the incident at issue in violation of the Fourth and Fourteenth Amendment; and 3) defendants Diggs, Gorney, and Sheehy acted with deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendment.

Dresher also brings state-law claims for assault and battery, intentional infliction of emotional distress, negligent hiring, training, and supervision, negligence, and spoliation.

## Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

### A. Federal Claims

Dresher brings his constitutional claims under 42 U.S.C. § 1983.

To succeed on a § 1983 claim, a plaintiff must prove: "1) the defendant was a person acting under the color of state law, and 2) the defendant deprived the plaintiff of rights,

4

privileges, or immunities secured by the Constitution or the laws of the United States." *Fridley v. Horrighs*, 291 F.3d 867, 871-72 (6th Cir. 2002).

In response to Dresher's constitutional claims, defendants assert qualified immunity. The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barker v. Goorich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Plaintiff bears the burden of proving defendants are not entitled to qualified immunity. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013).

To determine whether qualified immunity applies, I engage in a three-step inquiry:

First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted). If the answer to all three questions is "yes," qualified immunity is not proper.

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir 2004).

### 1. Count I - Excessive Force/Failure to Intervene

### a. Excessive Force[1]

Defendants concede Officers Diggs and Gorney used force against Dresher. Specifically, they admit using an "escort hold" and ultimately taking Dresher to the ground. They argue, however, the force was reasonable under the circumstances, and, therefore, they are entitled to qualified immunity.

There is no question Dresher had a constitutional right to be free from excessive force, *Graham v. Connor*, 490 U.S. 386, 395 (1989), and that right was clearly established. *Norton v. Stille*, 526 F. App'x 509 (6th Cir. 2013). In *Norton*, the court stated:

> It is clearly established that officers may not use force on a detainee who is subdued and controlled . . . . When force is used on a detainee who poses no threat to officers or anyone else, that force is excessive and it is a violation of the detainee's Fourth Amendment rights.

*Id.* at 513-14 (internal citations omitted).

What matters is whether plaintiff "'offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Champion, supra*, 380 F.3d at 905 (quoting *Feathers, supra*, 319 F.3d at 848).

---

[1]Plaintiff also brings his excessive force claim under the Fourteenth Amendment. I analyze the claim under the Fourth Amendment only. In the Sixth Circuit, prior to a probable-cause hearing, courts analyze excessive force claims under the Fourth Amendment. *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010) ("We therefore join the Ninth and Tenth Circuits in setting the dividing line between the Fourth and Fourteenth Amendment zones of protection at the probable-cause hearing."); *see also Burgess v. Fischer*, 735 F.3d 462, 474 (6th Cir. 2013) (holding the Fourth Amendment applied to a plaintiff's excessive force claim stemming from a takedown that occurred during the booking process). Here, it is undisputed that the alleged incident took place during booking before any probable-cause hearing.

The Fourth Amendment imposes an objective reasonableness test for excessive force claims. Recently, in *Kingsley v. Hendrickson*, — U.S. —, —, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable on an excessive force claim." Courts must weigh all the facts and circumstances and consider the reasonableness of the force from "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Specifically, courts should consider:

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

I conclude Dresher produced sufficient evidence to overcome summary judgment as to Officer Diggs.[2] A factual dispute remains regarding whether the circumstances justified the amount of force used.

First, the parties present drastically different portrayals of plaintiff's behavior in the dress out room.

Defendants attribute Diggs' use of force to a struggle brought on solely by Dresher's actions. According to Officers Diggs and Gorney, Dresher was agitated, confrontational, defiant,

---

[2]In his deposition, plaintiff admitted Officer Gorney did not cause him any physical injury. Rather, the only force Officer Gorney used was to restrain plaintiff's arms behind him. Further, in his opposition brief, plaintiff only objects to the dismissal of his excessive force claim against Officer Diggs. Therefore, Officer Gorney cannot be liable under an excessive force theory.

aggressive, and belligerent. The officers testified that Dresher refused their commands and efforts to handcuff him by tensing up, clenching his hands, and pulling away. They further characterize Dresher as threatening despite being unable to recall any specific threats. All of this, according to defendants, created volatile and uncertain circumstances and justified the use of force.

Plaintiff produced evidence suggesting no threat of harm or flight existed. While recognizing his earlier disruptive behavior, plaintiff claims he never posed a threat to jail safety or operations. According to plaintiff, he was neither violent nor aggressive. In the dress out room, he did not disobey any orders, resist the handcuffing, or attempt to escape the officers' control. He did not physically threaten the officers or make any threatening or furtive movements toward them. Instead, he claims he was unarmed and passive. Plaintiff also highlights the fact that both officers were completely unharmed.

Further, the parties dispute the events immediately preceding the takedown, and, contrary to representations by defendants' attorneys,[3] no surveillance video captured the incident. Both officers testified that after Dresher refused to put on the jumpsuit, they cautioned him before attempting to handcuff him. Then, both officers testified they pulled plaintiff's arms behind his back to handcuff him. At that point, plaintiff resisted, which led to the takedown.

---

[3] Defendant's motion states unequivocallly, "Per the tape, the takedown occurred at or around 04:17:40." (Doc. 27). Not so: there is no surveillance in the dress out room – for understandable reasons, given the fact that arrestees are, at some point, unclothed while in that room. Moreover, the jail surveillance tape shows the door to the room being closed behind the plaintiff and officers.

I caution counsel to be more careful in the future in their recitation of facts. Failure to recite the record with complete fidelity is, at best, unprofessional and unacceptable in this or any other court and, at worst, may expose the attorney, if found in willful noncompliance of the duty of candor to the court, to disciplinary or other sanctions.

In this instance, I will assume, but do not find, that the inaccurate statement as to what the video depicted as to the actual takedown was due to counsel's negligence, rather than having been purposeful.

The plaintiff, however, alleges that after he asked for help with the jumpsuit, Officer Diggs immediately grabbed him and violently pushed him up against the wall. Then, according to plaintiff, he voluntarily put his hands behind his back as a "surrender move," but the officers still took him down. Dresher's testimony does not reference any warning before being handcuffed

In the Sixth Circuit, "where . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).

Construing the facts in Dresher's favor, he alleges sufficient facts to show a reasonable jury could find defendant Diggs' use of force was unreasonable in light of clearly established law. *See, e.g., Lustig v. Mondeau*, 211 F. App'x 365, 371 (6th Cir. 2006) (finding plaintiff could demonstrate unreasonable force where "plaintiff . . . alleged . . . [defendant] repeatedly and gratuitously applied additional force . . . against an individual who posed no threat to safety, did not attempt to flee, offered at most passive resistance to the officers, and was already under the officers' physical control").

Therefore, I deny summary judgment on the issue of qualified immunity as to plaintiff's excessive force claim against defendant Diggs.

### b. Failure to Intervene

In his opposition brief, plaintiff does not oppose and concedes the failure to intervene claim only against Officer Gorney. Plaintiff, however, failed to respond to defendants' objection to his failure to intervene claim as to defendants Diggs and John Doe #1.

Under the Federal Rules:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . .

Fed. R. Civ. P. 56(e)(3).

I dismiss this claim as to Officer Diggs for lack of opposition to defendants' motion for summary judgment.

Nonetheless, and in the alternative, I will consider the merits on the facts of record. Dismissal on that basis is warranted as well.

The elements of a § 1983 failure to intervene claim are:

> [A] police officer who fails to prevent the use of excessive force may be held liable when 1) the officer observed or had reason to know that excessive force would be or was being used, and 2) the officer had both the opportunity and the means to prevent the harm from occurring.

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

In the Sixth Circuit, "courts have been unwilling to impose a duty to intervene where . . . an entire incident unfolds in a matter of seconds." *Ontha v. Rutherford County, Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007). That is exactly what the record shows here – an incident lasting but a few seconds, leaving no time or opportunity for Officer Diggs or John Doe #1 to react and intervene. Furthermore, it is illogical for plaintiff to maintain this claim against Officer Diggs, as he is the officer plaintiff alleges actually used excessive force and caused his injury.

Therefore, I grant summary judgment as to plaintiff's failure to intervene claim against all defendants.

**2. Count V - Failure Adequately to Train, Supervise, and Investigate**

In his opposition brief, plaintiff does not oppose and concedes the failure to train and supervise claim. Therefore, I treat this claim as withdrawn, and I grant summary judgment.

With respect to the failure to investigate claim, defendants argue no such claim exists as a matter of law.

Defendants correctly point out, "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007).

Yet, defendants conclude their analysis without addressing what plaintiff appears to allege – that Lucas County ratified the correction officers' actions *via* the failure to investigate. Plaintiff claims the failure to conduct a complete investigation demonstrates defendants "adopt[ed] and implicitly condon[ed] the use of excessive force." (Complaint p. 12).

"A municipality may . . . ratify its employees' acts – thereby subjecting itself to § 1983 liability – by failing meaningfully to investigate those acts." *Otero v. Wood*, 316 F. Supp. 2d 612, 627-28 (S.D. Ohio 2004) (citing *Wright v. City of Canton*, 138 F. Supp. 2d 955, 956 (N.D. Ohio 2001)).

Plaintiff points to two cases where the Sixth Circuit held a municipality ratified its employees' unconstitutional conduct by failing to conduct a meaningful investigation.

In *Marchese v. Lucas*, 758 F.2d 181, 183-84 (6th Cir. 1985), deputies brutally beat an inmate, and the sheriff did not conduct any investigation. The court held the sheriff's failure confirmed the existence of a "'policy' of toleration of illegal brutality toward any county prisoner who had threatened the life of a sheriff's deputy." *Id.* at 184. Because the sheriff served as the county's final law enforcement policymaker, the court also held the county liable. *Id.* at 189.

11

Similarly, in *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1242-43 (6th Cir. 1989), the sheriff did not investigate the failure to provide medical care to a paraplegic inmate. The court held the sheriff's failure evidenced the existence of a policy of deliberate indifference to the needs of paraplegic prisoners. *Id.* at 1248. Based on the same rationale as *Marchese*, the court also imposed liability on the municipality. *Id.*

Plaintiff also relies on *Wright, supra*, 138 F. Supp. 2d at 966, where the court held the chief of police's approval of an inadequate investigation into the alleged use of excessive force constituted municipal policy and created municipal liability.

Though the defendants failed to respond to plaintiff's argument, I conclude that I must, in light of the facts of record, I properly should dismiss this claim.

First, in *Marchese* and *Leach*, the plaintiffs complained of the complete absence of an investigation. In this case, an investigation of plaintiff's incident occurred – Lieutenant Richard Grove was responsible for the investigation, and Major Keel signed off on it.

Second, while plaintiff presents facts similar to *Wright* (*i.e.,* Grove did not take notes, never interviewed Officers Diggs or Gorney, and only viewed the surveillance video), there is no evidence that a final policymaker for Lucas County approved the alleged inadequate investigation. Here, neither Grove nor Keel are final policymakers with regard to law enforcement or investigations, so their investigation and approval are insufficient to constitute Lucas County policy. Thus, defendant Lucas County cannot be liable for the alleged excessive use of force.

Therefore, I grant summary judgment as to plaintiff's failure to investigate claim.

### 3. Count VIII - Deliberate Indifference to Plaintiff's Medical Needs

Although unclear from the complaint, it seems plaintiff's claim arises from two alleged facts: 1) Officer Diggs and Gorney pulled on his handcuffs despite his injury; and 2) Officer Diggs stepped on his injured arm.[4]

These allegations do not constitute a deliberate indifference claim. Rather, plaintiff's excessive force claim encompasses these allegations and is the proper avenue for relief. Further, this claim, though cognizable under the Fourteenth Amendment, is not actionable under the Eighth Amendment, which applies to convicted prisoners, not pretrial detainees. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Graham v. County of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004).

Because the facts alleged do not support a deliberate indifference claim, I grant summary judgment as to plaintiff's deliberate indifference claim.[5]

### B. State Law Claims

I may exercise supplemental jurisdiction over state law claims if state and federal claims derive from the same common nucleus of operative facts. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Plaintiff's state law claims derive from the same common nucleus of operative facts as his federal claims. Thus, supplemental jurisdiction is proper.

---

[4] In his opposition brief, plaintiff does not oppose and concedes the deliberate indifference claim against defendant Mary Sheehy. Plaintiff, however, maintains this claim as to defendants Diggs and Gorney.

[5] In any event, on the facts of record, given the brevity of the incident, no reasonable officer would have likely known or had reason to know that either handcuffing or stepping on plaintiff's arm, under all the circumstances, violated a duty to avoid deliberate indifference to plaintiff's medical condition.

13

Defendants argue they are entitled to immunity under Ohio Rev. Code. § 2744.03. Under § 2744.03(A)(6)(b), an employee of a political subdivision is immune from liability in a civil action based on any act or omission in connection with a governmental function unless "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless matter."

Because defendants are employees of a political subdivision, *see* O.R.C. § 2744.01(B), and the operation of a jail is a governmental function, *see* O.R.C. § 2744.01(C), they are entitled to immunity for plaintiff's state law claims unless one of the § 2744.03(A)(6) exceptions applies.

When there are genuine issues of material fact as to whether governmental employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner, I cannot extend state statutory immunity under § 2744.03. *See, e.g., Kaylor v. Rankin*, 356 F. Supp. 2d 839, 853 (N.D. Ohio 2005).

I consider each of plaintiff's state law claims in light of this doctrine.

### 1. Count II - Assault and Battery

Defendants assert their § 2744.03 immunity as a complete defense and, in the alternative, argue plaintiff cannot establish a claim of assault or battery.

In response, plaintiff claims defendants are not entitled to immunity because they acted with malicious purpose, in bad faith, or in a wanton or reckless matter.

Based on the same factual dispute presented by plaintiff's excessive force claim, a reasonable jury could conclude defendant Diggs acted with malicious purpose, in bad faith, or in

a wanton or reckless matter, therefore defeating at this stage the immunity claim.[6] *See, e.g., Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013) ("As resolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive-force determination . . . , the district court properly denied summary judgment to the officers on the estate's state-law claims.").

Similarly, because of the factual dispute, a reasonable jury could conclude defendant Diggs committed an assault or battery against plaintiff.

Because a genuine issue of material fact exists, I deny summary judgment as to plaintiff's assault and battery claim against defendant Diggs.

### 2. Count III - Intentional Infliction of Emotional Distress

Under Federal Rule of Civil Procedure 56, "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."

As noted above, if a party fails to support a factual assertion, I may grant summary judgment if the motion shows the movant is entitled to it. Fed. R. Civ. P. 56(e)(3).

I reviewed the record, and plaintiff states only the following: "Dresher alleges his arm was broken without justification (while defenseless and almost naked) and that additional harm was inflicted upon him post-break while handcuffed. Based on these facts, Dresher suffered an

---

[6]Because I grant summary judgment as to plaintiff's excessive force claim against Officer Gorney, it would be inconsistent to find him liable under an assault and battery theory.

intentional infliction of emotional distress." (Pl. Brief in Opposition p. 19). Plaintiff does not cite to any evidence to support this factual allegation as required by the Federal Rules.

Given the insufficiency of plaintiff's response to defendants' contention as to his intentional infliction of emotional distress claim, I grant summary judgment as to this claim.

### 3. Count IV - Negligent Hiring, Training, and Supervision

In his opposition brief, plaintiff does not oppose and concedes the negligent hiring, training, and supervision claim.

Therefore, I treat this claim as withdrawn, and I grant summary judgment.

### 4. Count VI - Negligence

Defendants assert their § 2744.03 immunity as a complete defense and, in the alternative, argue plaintiff cannot establish negligence.

In response, plaintiff claims defendants are not entitled to immunity because they acted with malicious purpose, in bad faith, or in a wanton or reckless matter.

"The Ohio immunity statute does not exclude negligence from its scope." *Kaylor*, *supra*, 356 F. Supp. 2d at 856. Even if plaintiff proves defendants were negligent, "mere negligence is insufficient to remove the cloak of immunity." *Reynolds v. Guerra*, 670 F. Supp. 3d 633, 643 (N.D. Ohio 2009) (internal citations omitted). Thus, defendants are entitled to immunity from suit with respect to plaintiff's claim that they acted negligently. *See, e.g., id.*; *Kaylor*, *supra,* 356 F. Supp. 2d at 856; *Gulett v. Haines*, 229 F. Supp. 2d 806, 819 (S.D. Ohio 2002) (finding corrections officer immune from suit with regard to pretrial detainee's claim of negligence arising from alleged beating by county jail inmate).

Therefore, I grant summary judgment as to plaintiff's state law negligence claim.

### 5. Count VII - Spoliation of Evidence

Plaintiff's spoliation claim involves notes defendant Sheehy made following her evaluation of plaintiff's injury and conversations with defendants Diggs and Gorney.

In Ohio, the elements of a spoliation claim are: "1) pending or probable litigation involving the plaintiff; 2) knowledge on the part of defendant that litigation exists or is probable, 3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, 4) disruption of the plaintiff's case, and 5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson*, 67 Ohio St.3d 28, 29 (1993).

In the context of a spoliation claim, "'willfulness' contemplates not only an intentional commission of the act, but also a *wrongful* commission of the act." *Drawl v. Cornicelli*, 124 Ohio App. 3d 562, 567 (1997). In other words, proof that evidence was deliberately destroyed is not sufficient; a plaintiff must prove the defendant acted with the intent to deprive another of the evidence that it deliberately destroyed.

Plaintiff bears the burden of proving defendants deliberately destroyed the notes with an intent to deprive him of that evidence and thereby "disrupt" his case against them. *Smith, supra,* 67 Ohio St. at 29. Although Sheehy admits she destroyed the notes, plaintiff provides no evidence that her doing so was wrongful – that she destroyed her notes with the intent to deprive him of them.

Therefore, I grant summary judgment as to plaintiff's spoliation claim.

**Conclusion**

It is, therefore,

ORDERED THAT defendants' joint motion for summary judgment be, and the same hereby is, granted, except with regard to plaintiff's § 1983 Fourth Amendment claim for unreasonable use of force and his state law claim for assault and battery, as to which claims the motion is denied.

The Clerk shall forthwith set a status/scheduling conference.

In light of my comments in footnote 3, the Clerk shall cause a copy of this order to be served on Ms. Julia Bates, Lucas County Prosecutor, in addition to service on counsel of record.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge